# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JIM YOUNGMAN and ROBERT ALLEN,
individually and on behalf of a class of all
persons and entities similarly situated,

     Plaintiffs

vs.

A&B INSURANCE AND FINANCIAL, INC.,

     Defendant

Case No. 6:16-cv-01478-CEM-GJK

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION AND ARGUMENT SUMMARY ................................................................. 1

BACKGROUND ............................................................................................................... 2

    A.    Background and the Telephone Consumer Protection Act ........................ 2

    B.    The Parties Engage in Comprehensive Discovery ................................... 3

    C.    The Uncertain Legal Landscape ............................................................. 4

    D.    The Settlement Negotiations ................................................................... 7

TERMS OF THE PROPOSED SETTLEMENT ..................................................................... 7

    A.    Proposed settlement class ....................................................................... 7

    B.    Settlement fund ...................................................................................... 8

    C.    Remedial Measures ................................................................................ 8

    D.    Notice and settlement administration ..................................................... 9

    E.    Opt-Out and Objections Procedure ........................................................ 9

    F.    Release ................................................................................................... 9

ARGUMENT .................................................................................................................. 10

    A.    The Settlement Falls Well Within the Range of Possible Approval, and Therefore Should Be Preliminarily Approved ...................................... 10

    B.    The Court Should Certify the Class for Settlement Purposes ............... 10

        1.    The Rule 23(a) Factors Are Met ............................................... 11

            a.    The Class is sufficiently numerous and joinder is impracticable ................................................................. 11

            b.    The Class shares many common issues of law and fact ............. 12

            c.    Plaintiffs' claims are typical of the Settlement Class .................. 13

            d. Plaintiffs and their counsel are adequate representatives .................... 14

        2.    The Rule 23(b)(3) factors are met ............................................ 15

    C.    The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval ........................... 16

    D.    The Notice Should Be Approved in Form and Substance ..................... 18

CONCLUSION ............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Int'l v. Fed. Commc'ns Comm'n,*
No. 15-1211 (D.C. Cir. July 10, 2015) ...............................................................6

*Agne v. Papa John's Int'l, Inc.,*
No. C10-1139-JCC, 2012 WL 5473719 (W.D. Wash. Nov. 9, 2012)....................16

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.,*
2012 WL 3027953 (W.D. Mich. July 24, 2012)....................................................16

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997).............................................................................................15

*Babineau v. Fed. Exp. Corp.,*
576 F.3d 1183 (11th Cir. 2009) ...........................................................................11

*Beattie v. CenturyTel, Inc.,*
511 F.3d 554 (6th Cir. 2007) ...............................................................................16

*Bee, Denning, Inc. v. Capital Alliance Group,*
2015 U.S. Dist. LEXIS 129495 (S.D. Cal. Sept. 24, 2015).............................16, 17

*Biringer v. First Family Ins., Inc.,*
Civil Action No. 4:14-cv-00566-RH-CAS (N.D. Fla. April 24, 2017) ...................14

*Cox v. Am. Cast Iron Pipe Co.,*
784 F.2d 1546 (11th Cir. 1986) ...........................................................................12

*Desai v. ADT Sec. Servs., Inc.,*
No. 11-1925, 2011 WL 2837435 (N.D. Ill. July 18, 2011) .....................................5

*In re Domestic Air Transport.,*
148 F.R.D. 297 (N.D. Ga. 1993)...........................................................................17

*Dominguez v. Yahoo!, Inc.,*
8 F. Supp. 3d 637 (E.D. Pa. 2014) .........................................................................6

*Drossin v. Nat'l Action Fin. Servs., Inc.,*
255 F.R.D. 608 (S.D. Fla. 2009)...........................................................................16

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974)..............................................................................................19

*Ferrara v. LCS Fin. Servs. Corp*.,
  2015 U.S. Dist. LEXIS 1448 (M.D. Fla. Jan. 7, 2015) ............................................................ 3

*Green v. Serv. Master*,
  No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) .................................................... 6

*Heidarpour v. Central Payment Co., LLC*,
  Civil Action No. 4:15-cv-139 (CDL) (M.D. Ga. Jan 17, 2017) .............................................. 14

*Hooters of Augusta, Inc. and Sam Nicholson v. Am. Global Ins. Co. and Zurich Ins.*
  272 F. Supp. 2d 1365 (S.D. Ga. July, 2003) .......................................................................... 2

*Kirkpatrick v. J.C. Bradford & Co.*,
  827 F.2d 718 (11th Cir. 1987) ............................................................................................... 14

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ............................................................................................. 11

*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F.2d 1332 (11th Cir. 1984) ............................................................................................. 13

*Mey v. Interstate Nat'l Dealer Services, Inc.*,
  Civil Action No. 14-cv-01846 (N.D. Ga. Jan. 28, 2016) ........................................................ 14

*Murray v. Auslander*,
  244 F.3d 807 (11th Cir. 2001) ............................................................................................... 13

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................................................ 15

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc*.,
  281 F.R.D. 327 (E.D. Wis. 2012) .......................................................................................... 16

*Romero v. Dep't Stores Nat'l Bank*,
  199 F. Supp. 3d 1256 (S.D. Cal. 2016) ................................................................................... 5

*Siding & Insulation Co. v. Combined Ins. Group, Ltd.*,
  No. 1:11 CV 1062, 2012 WL 1425093 (N.D. Ohio Apr. 23, 2012) ......................................... 16

*Silbaugh v. Viking Magazine Servs*.,
  278 F.R.D. 389 (N.D. Ohio 2012) .......................................................................................... 16

*Sparkle Hill, Inc. v. A&B Ins. Mat Corp.*,
  No. 11-10271, 2012 WL 6589258 (D. Mass. Dec. 18, 2012) ................................................. 16

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................................. 5

*Sterk v. Path, Inc.*,
    46 F. Supp. 3d 813 (N.D. Ill. 2014) ...................................................................6

*Thomas v. Taco Bell Corp.*,
    879 F. Supp. 2d 1079 (C.D. Cal. 2012) ...........................................................5

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) .........................................................................17

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*,
    No. 1:10-cv-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012).......................16

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) .......................................................................11

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
    271 F.R.D. 668 (D. Wyo. 2011) .........................................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)......................................................................................12

*Warren v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1998)................................................................17

*Western Rim Inv. Advisors, Inc. v. Gulf Ins. Co.*,
    269 F. Supp. 2d 836 (N.D. Tex. June, 17, 2003) ................................................2

*Whitten v. ARS Nat'l Services, Inc.*,
    No. 00-6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ...................................14

**Regulatory Cases**

*Bernstein v. Am. Family Ins. Co.*, 2004 TCPA Rep. 1268 (Ill. Cir. Feb. 23, 2004) ........................2

*In re Rules & Regulations Implementing the Tel. CPA of 1991*,
    27 FCC Rcd 1830 (F.C.C. Feb. 15, 2012) .........................................................3

*In re Rules and Regulations Implementing the Tel. CPA of 1991*,
    FCC 03-153, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673
    (July 3, 2003) ................................................................................................2, 3

**Statutes**

28 U.S.C. § 1715..........................................................................................................19

47 U.S.C. § 227(b) ....................................................................................................2, 5

47 U.S.C. § 227(b)(1)(A) .........................................................................................5, 13

47 U.S.C. § 227(c) ...................................................................................................2

47 U.S.C. § 227(c)(5).........................................................................................2, 5, 7

47 U.S.C. § 227 *et seq.*........................................................................................1, 6

**Rules**

Fed. R. Civ. P. 23.........................................................................................11, 18, 19

Fed. R. Civ. P. 23(a)..................................................................................11, 14, 15

Fed. R. Civ. P. 23(a)(1)..........................................................................................11

Fed. R. Civ. P. 23(a)(2)..........................................................................................12

Fed. R. Civ. P. 23(a)(3)..........................................................................................13

Fed. R. Civ. P. 23(a)(4)..........................................................................................14

Fed. R. Civ. P. 23(b)..............................................................................................11

Fed. R. Civ. P. 23(b)(3)..................................................................................11, 15, 18

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................18, 19

Fed. R. Civ. P. 23(e)(1)..........................................................................................19

Fed. R. Civ. P. 23(e)(1)(C) ...................................................................................10

**Regulations**

16 C.F.R. § 310.4(b)(1)(iii)(B)(2).........................................................................5

47 C.F.R. § 64.1200(c)(2)........................................................................................2

47 C.F.R. § 64.1200(c)(2)(ii)..................................................................................5

**Other Authorities**

H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002) ...................10, 19

## INTRODUCTION AND ARGUMENT SUMMARY

With substantial discovery completed, including obtaining telemarketing records from the Dominican Republic and expert discovery, plaintiffs Jim Youngman and Robert Allen ("Plaintiffs") and defendant A&B Insurance and Financial, Inc.[1] ("Defendant" or "A&B Insurance") (jointly "the Parties") have reached a proposed settlement in this putative Telephone Consumer Protection Act class action.[2] The settlement establishes a $4,250,000 non-reversionary Settlement Fund from which individuals who were contacted through the use of an automatic telephone dialing system, or an artificial or prerecorded voice, or whose telephone number was registered to the National Do Not Call Registry can make a claim for a cash payment.

The Parties' proposed settlement is fair and well within the range of preliminary approval for several reasons. First, it provides certainty for the Settlement Class in the face of Defendant's ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached only after engaging in substantial discovery and an arm's-length mediation with the assistance with Peter Grilli of Grilli Mediation in Tampa, FL, a facilitator experienced in mediating cases brought under the TCPA. Third, the settlement is not conditioned on any set amount of attorneys' fees or incentive award to proposed Class Counsel or Plaintiffs, which speaks to the fundamental fairness of the process.

As is described more fully below, Plaintiffs respectfully request that the Court grant their unopposed motion for preliminary approval in its entirety.

---

[1] A&B Insurance & Financial, Inc. is now known as A&B Insurance & Financial, LLC.

[2] *See* Settlement Agreement, and the accompanying exhibits, attached hereto as <u>Exhibit 1</u> ("The Settlement"). Although Defendant does not oppose Plaintiffs' Motion for purposes of approving the Settlement, it does not endorse Plaintiffs' allegations, nor their recitations of fact or law, and denies all liability in the action.

# BACKGROUND

## A.  Background and the Telephone Consumer Protection Act

The TCPA prohibits, *inter alia*, initiating any telephone solicitation to a telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry, or calling a cell phone using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. *See* 47 U.S.C. §§ 227 (b) and (c). The National Do Not Call Registry portion of the TCPA's regulations, under 47 C.F.R. § 64.1200(c)(2), prohibits "initiat[ing] any telephone solicitation … to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." A private right of action exists for such violations under 47 U.S.C. § 227(c)(5), which authorizes injunctive relief and damages.

In enacting the TCPA, Congress and the FCC, which interprets and enforces the statute, took steps to ensure that consumers could easily enforce the statute in an efficient manner.[3] The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003). In February of 2012, the Federal Communications Commission reiterated:

---

[3]*Hooters of Augusta, Inc. and Sam Nicholson v. American Global Ins. Co. and Zurich Ins.* 272 F. Supp. 2d 1365 (S.D. Ga. July, 2003) (concluding after reviewing the TCPA's extensive legislative history that the TCPA is a remedial statute); *Western Rim Investment Advisors, Inc. et al. v. Gulf Insurance Co.,* 269 F. Supp. 2d 836, 849-850 (N.D. Tex. June, 17, 2003) (the TCPA is a remedial statute); *Bernstein v. Am. Family Ins. Co.,* 2004 TCPA Rep. 1268 (Ill. Cir. Feb. 23, 2004) (concluding after reviewing the legislative findings relative to TCPA that the Congressional purpose in enacting the TCPA was remedial).

> Finally, should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.

*See In re Rules and Regulations Implementing the Tel. CPA of 1991*, 27 FCC Rcd 1830 at ¶112;

*In re Rules & Regulations Implementing the Tel. CPA of 1991*, 27 FCC Rcd 1830 (F.C.C.

Feb. 15, 2012). Courts have overwhelmingly recognized that consent defenses under the TCPA

are affirmative defense for which the defendant bears the burden of proof. *See Ferrara v. LCS*

*Fin. Servs. Corp.*, 2015 U.S. Dist. LEXIS 1448 (M.D. Fla. Jan. 7, 2015) (*citing Breslow v. Wells*

*Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012)) (defendant bears burden of

proof as to consent defenses).

The Plaintiffs are both Florida residents who, like many consumers nationwide, continue

to be pestered by automated and unwanted telemarketing calls despite the strict prohibitions on

such practices under the TCPA. In fact, in an extra effort to avoid such messages, both Plaintiffs

have registered their telephone numbers on the National Do Not Call Registry. However, despite

the registration on the DNC Registry, and even though Mr. Allen's number was registered to a

cellular telephone service, both Plaintiffs received multiple telemarketing calls promoting A&B

Insurance's goods and services. A&B Insurance facilitates the provision of health insurance in

the consumer marketplace. A&B Insurance uses telemarketing to attempt and obtain new clients.

In order to do that, A&B Insurance used third party vendors from the Dominican Republic.

**B.  The Parties Engage in Comprehensive Discovery**

The Plaintiffs' Complaint was filed on August 18, 2016, and then an Amended

Complaint was filed on May 4, 2017. *See* Dkt. Nos. 1; 42. On October 3, 2016, A&B Insurance

filed its Answer, and the parties submitted a case management report. *See* Dkt. No. 22; 33.

Discovery then commenced in earnest, and was voluminous. The parties reviewed more than

30,000 pages of documents. *See* <u>Exhibit 2</u>, affidavit of Anthony Paronich at ¶ 6. The focuses of discovery related to: (1) obtaining calling records from the Dominican Republic that identified putative class members; (2) the purported consent to make those calls; (3) any applicable insurance policies that could provide coverage for this matter; and (4) A&B Insurance's potential liability for the conduct of its calling centers. *Id.* at ¶ 7. Plaintiffs then retained an expert witness who evaluated the calling records to identify both cellular telephone numbers and numbers that were called multiple times while on the National Do Not Call Registry. *Id.* at ¶ 8.

### C.  The Uncertain Legal Landscape

The parties have litigated this case in the shadow of uncertainty regarding several legal questions presented by this case.

First, the parties disagree about whether A&B Insurance, who did not place telemarketing calls to Plaintiffs or putative class members, could be held vicariously liable for TCPA violations committed by the call center vendors who actually placed the calls. A&B Insurance maintains that it authorized the call center vendors to place calls on its behalf only under the certain circumstances. First, A&B Insurance says that the vendors were authorized to place calls only to telephone numbers that A&B Insurance supplied for that period. The vendors had no authority, according to A&B Insurance, to: (a) create, purchase, or use their own lead lists; (b) use lead lists in a manner inconsistent with A&B Insurance's instructions; or (c) otherwise call telephone numbers that A&B Insurance has not specifically asked them to call at that time. Second, under certain circumstances the vendors were authorized to call consumers only after the vendor has "scrubbed" the call lists against the National Do Not Call Registry, the Florida State Do Not Call Registry, and an internal do not call list. While Plaintiffs believe that A&B Insurance could be

held liable for calling activity that did not comply with these instructions, courts have been divided on this issue.[4]

Second, claims relating to alleged Do Not Call violations and claims relating to calls placed to cell phones using an autodialer fail if the particular putative class member provided consent to receive the calls. 47 U.S.C. § 227(b)(1)(A) (permitting calls to cell phones using an autodialer where the call is made "with the prior express consent of the called party"); 47 C.F.R. § 64.1200(c)(2)(ii) (exempting from liability callers who have "obtained the subscriber's prior express invitation or permission"). A&B Insurance maintains that it has viable consent defenses to the claims of many putative class members. For instance, A&B Insurance asserts that multiple lead vendors from whom A&B Insurance purchased leads employed consent disclaimers that authorized A&B Insurance to call those persons using an automatic telephone dialing system.

In addition, A&B Insurance claims that it has an existing business relationship with some putative class members, such as existing Blue Cross/Blue Shield customers, which would be a defense to claims relating to the Do Not Call Registry. *See* 16 C.F.R. § 310.4(b)(1)(iii)(B)(2).

Furthermore, the possibility of summary dismissal of this class was also tangible following the Supreme Court's decision in Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Some post *Spokeo* courts have held that a plaintiff who has received an unsolicited call in violation of the TCPA, without more, has not alleged a sufficient Article III harm. *See e.g. Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016) ("One singular call,

---

[4] *Compare Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, 2011 WL 2837435, at *1-3 (N.D. Ill. July 18, 2011) (finding that TCPA liability does not require a party to make a call) *with Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) (absence of "on behalf of" language in 47 U.S.C. § 227(b)—unlike Section 227(c)(5)—means the entity whose goods are advertised in a prerecorded message is not liable under the TCPA unless traditional vicarious liability principles are satisfied).

viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.") A&B Insurance also challenged the constitutionality of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq. See* Dkt. No. 34 ("The Clerk is directed to send this Certification and the Notice of Claims of Unconstitutionality (Dkt. 31) to the Attorney General of the United States"). Of course, any finding by this Court that the TCPA was unconstitutional would have resulted in no recovery for the Plaintiffs or the putative class.

Moreover, any determination that the dialing system A&B Insurance's telemarketing vendors used was not an ATDS would have also resulted in a victory for the Defendant on that portion of the Plaintiffs' claim. Courts have reached different conclusions on the requirements of an ATDS. *Compare Sterk v. Path, Inc.*, 46 F. Supp. 3d 813 (N.D. Ill. 2014) (adopting Plaintiff' interpretation) with *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637 (E.D. Pa. 2014) (adopting Defendant's interpretation). Furthermore, A&B Insurance could have petitioned the FCC to seek a declaratory ruling on the consent or ATDS issues. Such a petition could have delayed the resolution of this litigation for several years. In fact, such a petition, after being pending before the FCC for more than a year, was appealed is pending before the United States Court of Appeals for the District of Columbia Circuit right now. *See ACA Int'l v. Federal Communications Commission*, No. 15-1211 (D.C. Cir. July 10, 2015) (petition for review).

Additionally, class certification is far from automatic in TCPA cases. *Compare Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted), *with Green v. Serv.*

*Master*, No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) ("[T]he question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification."). As such, class certification in this matter was far from a foregone conclusion.

Finally, even if a class was certified, it faced an uncertain fate. In addition to the vicarious liability risks raised above, the TCPA's statutory damages provision allows for damages of "up to $500 per call." *See* 47 U.S.C. § 227(c)(5). So, if after a trial, the jury decided to award each class member $1 for the illegal telephone calls received, a judgment would have been entered for substantially less than the statutory maximum.

### D.  The Settlement Negotiations

Against this unsettled background, the parties began to explore settlement. The parties mediated this matter with Peter Grilli in Tampa, Florida in April of 2017. While the parties did not sign the attached settlement agreement at the mediation, they agreed to the parameters for the class action settlement. Finalizing the formal settlement papers continued over the course of the next month, and culminated in the Settlement Agreement that Plaintiffs now move the Court to preliminarily approve.

### <u>TERMS OF THE PROPOSED SETTLEMENT</u>

### A.  Proposed settlement class

The proposed settlement would establish a Settlement Class defined as follows:

> All persons within the United States whom Defendant, through a third party call center, initiated either: (a) more than one telemarketing call within any twelve-month period to phone numbers registered on the Do Not Call Registry for at least 31 days; or (b) any telephone calls to cellular telephone numbers using an automatic telephone dialing system or an artificial or prerecorded voice between August 18, 2012 through April 26, 2017, as reflected in the records produced by the third party call centers. The telephone numbers of these individuals for the relevant time period are identified in the February 21st, 2017 expert report of Anya Verkhovskaya.

**B.  Settlement fund**

The proposed settlement would establish a $4,250,000 Settlement Fund that will be used to make payments to Settlement Class Members, and to pay notice and administration costs, Court-approved attorneys' fees, costs, and expenses, and any Court-approved service payment to the Plaintiffs. Authorized claimants would be entitled to equal shares of the remainder of the Settlement Fund after payments for notice, administration, attorneys' fees and costs, and Plaintiffs' service payments have been made. If administratively and economically feasible, any proceeds from uncashed checks will be distributed in a second round of checks to those claimants who cashed their checks. Any funds that remain after class members are paid will be distributed through a *cy pres* award to an entity approved by the Court, however, because of the second round of distribution, the Parties anticipate that any *cy pres* payment will be minimal.

**C.  Remedial Measures**

In response in part to the filing of the Action, A&B Insurance has, in addition to requiring the call center vendors it works with to scrub call lists against the relevant state and federal do not call registries, begun scrubbing call lists before sending them to a vendor. A&B Insurance also has implemented steps to identify mobile telephone numbers, and scrubs those lists as appropriate before sending them to its call center vendors. A&B Insurance also has implemented additional protocols to ensure that consent exists for calls to cellular telephone numbers, including, but not limited to, confirming consent was obtained from any clients or list vendors. Further, A&B Insurance has terminated its relationship with the call center vendors who placed the calls to those individuals on the Class List. These remedial measures are designed to ensure that the actions alleged in the Complaint do not recur, and is also a substantial class member benefit.

### D.  Notice and settlement administration

Using call records produced during discovery, Plaintiffs' expert identified 330,511 unique telephone numbers, the owners, subscribers, or customary users of which may have a claim against A&B Insurance under the TCPA. The call records also contained addresses for some of these Settlement Class Members. The Claim Form and Notice, which are attached as exhibits to the Settlement Agreement, will be mailed to the Settlement Class Members for whom an address can be located in the call records produced during discovery. The Notice Plan has been designed by, and, upon the Court's approval, will be executed by a third-party administrator, who will also publish the Notice attached to the Settlement Agreement on a website identified on the Claim Form.

### E.  Opt-Out and Objections Procedure

After receiving Notice, Settlement Class Members will have at least sixty days from the issuance of notice to exclude themselves from the settlement or object to its approval. The deadlines for filing opt-out requests and objections will be conspicuously listed in the Notice, as well as on the settlement administrator's website. The process for filing exclusions and objections is explained in the Notice. With regard to objections, the Notice informs Settlement Class Members that the Final Approval Hearing will be the only opportunity for them to appear and have their objections heard. The Notice also informs Settlement Class Members who choose to participate in the Settlement that they will be bound by the release.

### F.  Release

The release is appropriately tailored to the claims raised in the case, and is limited to the putative class members identified by the Plaintiffs' expert in discovery. In exchange for settlement benefits, Plaintiffs and participating Settlement Class Members will release A&B

Insurance and related parties from any and all claims by Settlement Class Members that relate to solicitation violations for the telemarketing calls sent from the alleged agents that made the calls to the putative class.

## ARGUMENT

### A. The Settlement Falls Well Within the Range of Possible Approval, and Therefore Should Be Preliminarily Approved

The settlement represents a fair and reasonable resolution of this dispute and is worthy of notice to, and consideration by, the Settlement Class Members. It will provide financial relief to participating Settlement Class Members and will relieve the parties of the burden, uncertainty and risk of continued litigation.

Under Rule 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." There is usually an initial presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg & A. Conte, *Newberg on Class Actions* §11.41 (4th ed. 2002).

### B. The Court Should Certify the Class for Settlement Purposes

For settlement purposes only, the parties have agreed that the Court may make preliminary findings and enter an order granting provisional certification of the Settlement Class and appoint Plaintiffs and their counsel to represent the Class. "The validity of use of a temporary settlement class is not usually questioned." Newberg, *supra*, § 11:22. The Manual for Complex Litigation, § 21.612, explains the benefits of settlement classes:

> Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. (citation omitted). Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of

> the class allegations if the settlement is not approved and, in Rule 23(b)(3) actions, to withdraw from the settlement if too many class members opt out. An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

For settlement purposes only, the Settlement Class is submitted for certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined in the Settlement Agreement and also appears above. As detailed below, the Settlement Class meets all of the applicable certification requirements.

Plaintiffs seek certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure. Class certification is appropriate when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied. Fed. R. Civ. P. 23; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law or fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and its counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a); *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009). In this case, the evidence already gathered is sufficient to support class certification.

## 1.   The Rule 23(a) Factors Are Met

### a.   The Class is sufficiently numerous and joinder is impracticable

The first requirement of Rule 23(a) is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (*quoting Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)). Generally, the numerosity requirement is not met with numbers fewer than 21, but is

11

satisfied when the class comprises 40 or more members. *See Cox v. Am. Cast Iron Pipe Co.*, 784

F.2d 1546, 1553 (11th Cir. 1986). In this case, Plaintiffs' expert identified 330,511 unique

telephone numbers to which A&B Insurance placed calls that Plaintiffs allege violate the TCPA.

The numerosity requirement is easily satisfied.

### b.  The Class shares many common issues of law and fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To

meet the commonality requirement, the plaintiff must demonstrate that the proposed class

members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

(2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words,

commonality requires that the claims of the class "depend upon a common contention…of such a

nature that it is capable of classwide resolution -- which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Id.* Commonality may be shown when the claims of all class members "depend upon a common

contention" and "even a single common question will do." *Dukes*, 131 S. Ct. at 2545, 2556.

Plaintiffs have litigated this case so that the most important questions at issue are

common to Plaintiffs and all Settlement Class Members, and so that those questions may be

decided in broad strokes that apply to all Settlement Class Members. Defendant's alleged

violations were the subject of the same business model with respect to each member of the

Settlement Class—they all involve autodialed telemarketing calls using the same technology to

try to generate eventual sales for A&B Insurance. Further, the evidence also shows that the calls

were transmitted in furtherance of the relationship between the Defendant and third parties. As

such, this case presents many common questions applicable to the Settlement Class, including:

- Is A&B Insurance liable under the TCPA for illegal telemarketing calls
  transmitted by the telemarketers it hired?

12

- Did the calls made by A&B Insurance's agents use an "automatic telephone dialing system or an artificial or prerecorded voice" under Section 227(b)(1)(A) of the TCPA?

- Were members of the class called twice in a twelve month period despite their prior registration on the National Do Not Call Registry?

- Could A&B Insurance demonstrate that the calls were made with the prior express consent of the called party?

- Are class members entitled to TCPA statutory damages?

As the Settlement Class Members here have all suffered the same injury and are generally subject to the same defenses, commonality is satisfied.

### c.  Plaintiffs' claims are typical of the Settlement Class

To satisfy Rule 23(a)(3)'s typicality requirement, a plaintiff must possess the same interest and have suffered the same injury as the other class members. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Typicality can be satisfied even if substantial factual differences exist between the plaintiff and the other class members if there is a "strong similarity of legal theories." *Id*. Typicality will be satisfied if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984). Commonality and typicality overlap, and a finding of one usually results in a finding of the other. *Id*.

Here, not only is there "strong similarity of legal theories," Plaintiffs' claims are identical to the claims of the other putative class members in all material ways. First, Plaintiffs and the other putative class members received automated telephone calls. Second, both Plaintiffs and the putative class seek to hold A&B Insurance liable illegal telemarketing calls made by their telemarketers. As a result, each of the Plaintiffs' rights under the TCPA were affected by the same common course of conduct that A&B Insurance subjected every other putative class

member to, and Plaintiffs, like all of the other class members suffered the exact same injury. As such, typicality is satisfied.

### d. Plaintiffs and their counsel are adequate representatives

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the proposed class representative must not have any interests antagonistic to those of the other members of the class, and he or she must be represented by competent counsel. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

Plaintiffs have no conflicting interests with class members. In fact, by investigating, filing, and vigorously pursuing this case, Plaintiffs have demonstrated a desire and ability to protect class members' interests. Plaintiffs have elected not to pursue solely their individual claims in this matter, but instead are prosecuting the case on behalf of a class of persons who, like them, have been subjected to unlawful telemarketing.

Plaintiffs' counsel has regularly engaged in major TCPA litigation, and have extensive experience in consumer class action lawsuits. (Affidavits of Plaintiffs' Counsel are attached as Exhibits 2-5.) Plaintiffs' counsel have been appointed as class counsel in numerous TCPA class actions in the Eleventh Circuit, including in federal court in Florida. *See e.g. Biringer v. First Family Insurance, Inc.,* Civil Action No. 4:14-cv-00566-RH-CAS, Dkt. No. 94 (N.D. Fla. April 24, 2017); *Mey v. Interstate National Dealer Services, Inc., et. al.*, Civil Action No. 14-cv-01846 (N.D. Ga. Jan. 28, 2016); *Heidarpour v. Central Payment Co., LLC*, Civil Action No. 4:15-cv-139 (CDL), Dkt. No. 63 (M.D. Ga. Jan 17, 2017). "The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again." *Whitten v. ARS Nat'l Services, Inc.*, No. 00-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) (internal

quotations omitted). Accordingly, Plaintiffs and their counsel will adequately represent the

Settlement Class. The requirements of Rule 23(a) are, therefore, satisfied.

### 2. The Rule 23(b)(3) factors are met

A class action may be maintained under Rule 23(b)(3) if all Rule 23(a) requirements are

met and "the court finds that the questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Pertinent matters

include: (1) the class members' interests in individually controlling the prosecution or defense of

separate actions, (2) the desirability or undesirability of concentrating the litigation of the claims

in the particular forum, and (3) the likely difficulties in managing a class action. Fed. R. Civ. P.

23(b)(3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-616 (1997) (addressing

predominance and superiority requirements). The predominance inquiry "tests whether proposed

classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.

As an initial matter, the difficulties of managing a class action are vitiated by this

settlement. When "confronted with a request for settlement only class certification, a district

court need not inquire whether the case, if tried, would present intractable management problems

… for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. A class action is the

superior method of resolving large scale claims if it will "achieve economies of time, effort, and

expense, and promote . . . uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615.

In this case the aggregate claims of the class are comprised of calculable statutory

damages in amounts that make it uneconomic for individuals to pursue these claims on their

own. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Many decisions recognize the

benefits of class certification in cases involving small individual recoveries, in the context of

consumer cases generally,[5] and TCPA cases in particular.[6] The overriding justification for

certification of these claims is compelling, and applies with equal force here. As one federal

court posited when granting class certification in a TCPA case:

> Jurists and commentators have long debated the merits of the modern class action
> and the public policies behind Rule 23…It is the view of this Court that the instant
> case highlights one of the strongest justifications for the class action device: its
> regulatory function…A statute such as the TCPA, which provides for a relatively
> small recovery for individual violations but is designed to deter conduct directed
> against a large number of individuals, can be effectively enforced only if
> consumers have available a mechanism that makes it economically feasible to
> bring their claims. Without the prospect of a class action suit, corporations
> balancing the costs and benefits of violating the TCPA are unlikely to be deterred
> because individual claims will not impose the level of liability that would
> outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital Alliance Group*, 2015 U.S. Dist. LEXIS 129495, 37-38 (S.D. Cal.

Sept. 24, 2015). For all these reasons, the class action device is the superior means of resolving

this case.

### C. The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval

After determining that a proposed settlement class is appropriate for certification, courts

consider whether the proposed settlement itself warrants preliminary approval. The procedure for

---

[5] *See, e.g., Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007) ("Such a small possible recovery [of approximately $125] would not encourage individuals to bring suit, thereby making a class action a superior mechanism for adjudicating this dispute."), *cert denied,* 129 S. Ct. 608 (2008); *Drossin v. National Action Fin. Servs., Inc.*, 255 F.R.D. 608, 617 (S.D. Fla. 2009).

[6] Many federal courts have certified TCPA actions. *See e.g., Agne v. Papa John's Int'l, Inc.*, No. C10-1139-JCC, 2012 WL 5473719 (W.D. Wash. Nov. 9, 2012); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012); *Sparkle Hill, Inc. v. A&B Insurance Mat Corp.*, No. 11-10271, 2012 WL 6589258 (D. Mass. Dec. 18, 2012); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 2012 WL 3027953 (W.D. Mich. July 24, 2012); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327 (E.D. Wis. 2012); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012); *Siding & Insulation Co. v. Combined Ins. Group, Ltd.*, No. 1:11 CV 1062, 2012 WL 1425093 (N.D. Ohio Apr. 23, 2012).

review of a proposed class action settlement is a well-established two-step process. Alba & Conte, 4 Newberg on Class Actions, § 11.25, at 38–39 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Id.* (quoting Manual for Complex Litig., § 30.41 (3d ed. 1995)).

Moreover, settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* Manual For Complex Litig. at § 30.42. Further, there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998). This is because class action settlements ensure class members a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Thus, while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the parties. *Warren*, 693 F. Supp. at 1054 (affording "great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation"). Here, there should be no question that the proposed Settlement is "within the range of possible approval." To start, the process used to reach the settlement was exceedingly fair. That is, the proposed Settlement was reached only after contentious and hard-fought litigation, substantial class and merits-based discovery, obtaining telephone records from the Dominican Republic, expert discovery, and arm's-length settlement negotiations with the assistance of an experienced and well-regarded mediator in Florida.

Moreover, the Parties agreed on the terms of the settlement through experienced counsel who—especially given that the Settlement wasn't reached until after necessary discovery was completed—possessed all the information necessary to evaluate the case and reach a fair and reasonable compromise. That information shed further light on the contours of the proposed Class and Defendants' conduct, and ultimately informed the terms of the Settlement now before the Court.

The relief afforded to the Settlement Class further demonstrates the fairness, reasonableness and adequacy of the Settlement. By submitting a short and simple claim form, Settlement Class Members who believe they have a claim are entitled to a pro rata payment out of the $4,250,000 common fund. Furthermore, as part of its response to this litigation, A&B Insurance has taken the steps outlined above to prevent these types of issues from occurring, which provides further relief to the Class. Given the various forms of relief offered under the Settlement, coupled with the robust notice plan (*i.e.*, direct notice via First Class U.S. Mail and the creation of a Settlement Website), Counsel believe that the results achieved are well within the range of possible approval.

For all of these reasons, Plaintiffs and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of approval. Accordingly, the Court should grant preliminary approval.

### D.  The Notice Should Be Approved in Form and Substance

To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides that "for any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members

who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that the notice be reasonably disseminated to those who would be bound by the court's judgment. Notice is proper as long as the average class member would be able to understand it, *Newberg* § 11:53 at 167, and the substance of the notice describes the nature of the action, the definition of the class to be certified, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). Further, notice must also explain that settlement class members may enter an appearance through counsel or request to be excluded from the settlement class so as not to be bound by any judgment. *Id.*

The Parties have agreed upon a multi-part notice plan that easily satisfies the notice requirements of both Rule 23 and Due Process. Using the call logs obtained from the Dominican Republic, the Plaintiffs' expert witness has identified telephone phone numbers of individuals and entities to whom A&B Insurance placed a call or calls that Plaintiffs claim violates the TCPA. The Settlement Administrator will send Notice, with an accompanying Claim Form, to each address that can be obtained using the phone numbers in the call. The Notice will include instructions for a claim form that can be filed online, or through first class mail, and also include a link to the Settlement Website, which will include the Notice, and provides access to relevant court documents.

Finally, the Settlement Administrator will cause notice of the proposed Settlement to be served, pursuant to 28 U.S.C. § 1715, within ten (10) days after it is filed with the Court, to the Attorneys General of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and other required government officials. In sum, the proposed methods for providing notice to the Settlement Class fully comport with both Rule 23 and Due Process and should be approved by the Court.

## <u>CONCLUSION</u>

The proposed class action settlement is fair, reasonable, and adequate. For the foregoing reasons, the proposed settlement is well within "the range of possible approval," and should be approved in all respects.

A proposed agreed order is submitted as <u>Exhibit 6</u> to Plaintiffs' Motion.

Respectfully submitted for Plaintiffs,

Dated: May 31, 2017         By:  */s/ Anthony I. Paronich*
                        Edward A. Broderick
                        Email: ted@broderick-law.com
                        Anthony Paronich
                        Email: anthony@broderick-law.com
                        BRODERICK & PARONICH, P.C.
                        99 High Street, Suite 304
                        Boston, Massachusetts 02110
                        Telephone: (617) 738-7080

                        Matthew P. McCue
                        Email: mmccue@massattorneys.net
                        THE LAW OFFICE OF MATTHEW P. MCCUE
                        1 South Avenue, Suite 3
                        Natick, Massachusetts 01760
                        Telephone: (508) 655-1415

                        Tim Howard, J.D., Ph.D.
                        Florida Bar No.: 655325
                        tim@howardjustice.com
                        HOWARD & ASSOCIATES, P.A.
                        2120 Killarney Way, Suite 125
                        Tallahassee, Florida 32309
                        Telephone: (850) 298-4455
                        Fax: (850) 216-2537

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all attorneys of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich
