# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JIM YOUNGMAN and ROBERT
ALLEN, individually and on behalf of a
class of all persons and entities similarly
situated,

           **Plaintiff,**

v.                                             **Case No:   6:16-cv-1478-Orl-41GJK**

A&B INSURANCE AND FINANCIAL,
INC.,

           **Defendant.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (Doc. No. 46)** |
| **FILED:** | **May 31, 2017** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I.   FACTUAL BACKGROUND

### A.   Procedural History

The matter before the Court is a proposed class action settlement under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Doc. Nos. 42, 46. In the Amended Complaint, Plaintiffs Jim Youngman and Robert Allen allege that Defendant "provides health insurance services for sale in the consumer marketplace." Doc. No. 42 at ¶ 21. Defendant allegedly "uses telemarketing to attempt and obtain new clients." *Id.* at ¶ 22. Plaintiffs allege that Defendant

"placed multiple telemarketing calls to telephone numbers registered on the National Do Not Call Registry [(the "Registry")] and made prerecorded calls placed via an Automatic Telephone Dialing System [("ATDS")] to cellular telephones, all in violation of the TCPA." *Id.* at ¶ 2. Telephone solicitations to residential telephone subscribers listed on the Registry are prohibited by the TCPA. *Id.* at ¶ 12. If a number on the Registry has been called more than once within a twelve-month period, then the owner of the number can sue the violator and seek statutory damages. *Id.* at ¶ 13. Also prohibited are calls using an ATDS or an artificial or prerecorded voice to a cell phone, unless the recipient gave prior express consent. *Id.* at ¶ 15. Plaintiffs allege that Youngman received calls from Defendant on January 18 and 20, 2016, in addition to other dates, "from telemarketing representatives calling from" Defendant and that his telephone number was on the Registry. *Id.* at ¶¶ 20, 23. Plaintiffs also allege that "Defendant has received a number of complaints related to calling individuals who were on state or federal Do Not Call registries." *Id.* at ¶ 28.

Plaintiffs claim that Allen received "a prerecorded telephone call placed via an ATDS . . . promoting the goods and services of [Defendant] in December of 2015." *Id.* at ¶ 32. Plaintiffs filed a one-count class action complaint against Defendant for allegedly violating these provisions of the TCPA by making or hiring people to make the calls to Youngman and Allen. *Id.* at 9-10. Plaintiffs allege, "Under the TCPA, a seller of a product or service may be vicariously liable for a third-party marketer's violations of Section 227(b), even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did." *Id.* at ¶ 33.

Plaintiffs tentatively defined the class in the Amended Complaint as the following:

> All persons within the United States whom Defendant, through a third party call center, initiated either: (a) more than one telemarketing call within any twelve-month period to phone numbers registered on the Do Not Call Registry for at least 31 days; or (b) any telephone calls to cellular telephone numbers using an automatic telephone dialing system or an artificial or prerecorded

> voice between August 18, 2012 through April 26, 2017, as reflected in the records produced by the third party call centers. These individuals are identified in the February 21st, 2017 expert report of Anya Verkhovskaya.

*Id.* at ¶ 38. Plaintiffs excluded the following from the class: "Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family." *Id.* at ¶ 39.

Plaintiffs request injunctive relief; statutory damages of $500 and treble damages of up to $1,500, per call; their attorney's fees and costs for them and the proposed class; and "[a]n order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court [sic] deems appropriate, finding that Plaintiffs are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class . . . ." *Id.* at 9-10.

In April 2017, the parties mediated this case and agreed to the parameters of a class action settlement. Doc. No. 46 at 7. On May 31, 2017, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"). Doc. No. 46. In support of the Motion, Plaintiff attaches: 1) the Class Action Settlement Agreement (the "Agreement"); 2) a proposed Final Approval Order and Judgment; 3) the Proposed Notice; 4) a proposed Preliminary Approval Order; and 5) affidavits from Plaintiffs' counsel attesting to their qualifications. Doc. Nos. 46-1 through 46-6.

**B.     The Settlement Terms**

1.     The Settlement Class

The Settlement Class is defined as follows in the Agreement:

all persons within the United States whom Defendant, through a third party call center, initiated either: (a) more than one telemarketing call within any twelve-month period to phone numbers registered on the Do Not Call Registry for at least 31 days; or (b) any telephone calls to cellular telephone numbers using an automatic telephone dialing system or an artificial or prerecorded voice *between August 18, 2012 through April 26, 2017*, as reflected in the records produced by the third party call centers. The telephone numbers of these individuals for the relevant time period are identified in the February 21st, 2017 expert report of Anya Verkhovskaya ("**Class List**").

Doc. No. 46-1 at 6-7 (emphasis added). Thus, two subparagraphs are used to define the Settlement Class. Subparagraph (a) relates to calls made to numbers on the Registry. Subparagraph (b) relates to ATDS, artificial or prerecorded voice violations occurring from August 18, 2012, through April 26, 2017. Although not part of the definition of Settlement Class, the Agreement then states that the "numbers for these individuals for the relevant time period" are on the Class List. *Id.* The Agreement does not contain any of the exclusions from the Settlement Class that are in the Amended Complaint. "Settlement Class Members" is defined as "any owner, subscriber, customary user or individual or entity included within the definition of the Settlement Class and who has not submitted a valid request for exclusion." *Id.* at 7.

2.     Effective Date

The Agreement defines the Effective Date as the following:

one (1) business day following the later of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Approval Order and Judgment; or (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of final dismissal or completion – in a manner that finally affirms and leaves in place the Final Approval Order and Judgment.

Doc. No. 46-1 at 4. On the Effective Date, the Releasing Parties shall be deemed to have fully released the Released Claims against the Released Parties. *Id.* at 9.

3.      Releasing Parties, Released Claims, and Released Parties

The Agreement defines the terms "Releasing Parties," "Released Claims," and "Released

Parties," as follows:

> "**Released Claims**" For the Plaintiffs and each Settlement Class
> Member it means: Plaintiffs and each member of the Settlement
> Class identified on the Class List and not opting out, and their
> respective assigns, heirs, successors, predecessors, parents,
> subsidiaries, officers, directors, shareholders, members, managers,
> partners, principals, representatives, employees (each solely in their
> respective individual capacity as such) ("**Releasing Parties**"), do
> hereby release and forever discharge A&B Insurance and all of its
> affiliates, past, current and future, parents, predecessors, successors,
> subsidiaries, and all of their respective officers, directors, partners,
> members, principals, employees, agents, vendors, attorneys,
> servants, and assigns ("**Released Parties**") of and from all claims,
> demands, causes of actions, suits, damages, and fees arising out of
> or relating to the placing of telemarketing calls made on behalf of,
> or promoting, A&B Insurance or goods or services provided by
> A&B Insurance, arising under state and federal telemarketing laws
> from *August 18, 2012 through April 26, 2017*.

Doc. No. 46-1 at 5-6 (emphasis added). Thus, the Releasing Parties release the Released Parties

from all claims arising out of or relating to telemarketing calls on behalf of or promoting Defendant

from August 18, 2012, through April 26, 2017.[1] "Releasing Parties" is a smaller group than the

Settlement Class, as Releasing Parties includes those on the Class List, while it appears that the

Settlement Class definition is not limited to those on the Class List.[2]

4.      The Settlement Fund

Defendant agrees to provide a settlement fund of $4,250,000.00 (the "Settlement Fund").

Doc. No. 46-1 at 7. Settlement Class Members who file a valid claim shall be paid a pro rata share

---

[1] As discussed below, the definition of Releasing Parties is central to the parties' Agreement because the operative provisions of the proposed final judgment use that defined term in effectuating the release and in enjoining the Released Claims. Doc. No. 46-1 at 27-28.

[2] Instead, the Agreement describes the Class List as a list of telephone numbers for those individuals in the Settlement Class. Doc. No. 46-1 at 6-7. Similarly, as noted above, although Subparagraph (a) of the definition contains no temporal limitation, *id.* at 6-7, the Released Claims are limited to calls made during the period from August 18, 2012, through April 26, 2017.

of the "Net Settlement Proceeds." *Id.* at 8. The Net Settlement Proceeds represent the amount remaining in the Settlement Fund "after the payment of attorney's fees and expenses, costs of administration and such other expenditures as may be authorized by the Court . . . ." *Id.* Only one claim per telephone number shall be paid. *Id.* at 8-9.

Plaintiffs ask that they be paid $10,000 dollars each as "an incentive award." *Id.* at 15. Neither the Agreement nor the Proposed Notice specifically states that the Settlement Fund will be used to pay the incentive award, *id.* at 15, 37, although, if the Court approves the incentive award, it could be considered the payment of an expenditure authorized by the Court. The amount of attorney's fees to be paid to Plaintiffs' attorneys ("Class Counsel") is subject to Court review, but the Agreement provides for a proposed fee of 33 1/3 percent of the Settlement Fund, which is $1,416,666.67. *Id.* at 15. The Agreement states that "attorney's fees and expenses" will be paid out of the Settlement Fund, *id.* at 8, but does not state the amount of the expenses. The Proposed Notice states that the amount of expenses to be paid to Class Counsel is $42,922.86. *Id.* at 36. In their affidavits, Class Counsel states that their firms advanced approximately this amount to fund the litigation. Doc. No. 46-3 at 2; Doc. No. 46-4 at 2; Doc. No. 46-5 at 2.

     5.     Objections

The Agreement contains the following requirements for objecting to the Agreement:

> Any member of the Settlement Class who intends to object must send to the Court a written statement that includes: his or her full name; address; telephone number or numbers that he or she maintains were called; all grounds in detail for the objection, with factual and legal support for each stated ground; the identity of any witnesses he or she may call to testify; copies of any exhibits that he or she intends to introduce into evidence at the Final Approval Hearing; a statement of the identity (including name, address, phone number and email) of any lawyer who was consulted or assisted with respect to any objection, and a statement of whether he or she intends to appear at the Final Approval Hearing with or without counsel. Any member of the Settlement Class who fails to timely

file a written objection in accordance with the terms of this paragraph and as detailed in the Notice, and at the same time provide a copy of the filed objection to the Settlement Administrator, shall not be permitted to object to this Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Agreement by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding. To be timely, the objection must be filed and sent to the Settlement Administrator on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.

Doc. No. 46-1 at 10-11. Thus, objections must be timely, made in writing, contain specified information, be filed with the Court, and sent to the Settlement Administrator.

## C.     The Proposed Notice

The parties attach the Proposed Notice detailing, *inter alia*: 1) the nature of the lawsuit; 2) the names of Class Counsel; 3) the reason for receiving the notice; 4) the date and time of the final settlement hearing; and 5) the proposed settlement. Doc. No. 46-1 at 32-39. Within twenty-one days after preliminary approval of the class action settlement, direct notice will be sent to "the names and addresses associated with the telephone numbers in the Settlement Class . . . ." Doc. *Id.* at 10.

The Proposed Notice defines the Settlement Class by stating:

> You are in the "Settlement Class" if, *on or after August 18, 2012*, A&B Insurance, or a third party acting on A&B Insurance's behalf:
>
> (1)     Called you on a cellular telephone using an automatic telephone dialing system, or an artificial or prerecorded voice; or
>
> (2)     Called you two or more times within a twelve-month period on a telephone number that was on the National Do-Not-Call Registry.

*Id.* at 34 (emphasis added). Thus, unlike Subparagraph (b) of the Agreement's definition of Settlement Class and the definition of Released Claims, the Proposed Notice contains no cut-off

date. According to the Proposed Notice, if a Settlement Class Member does not return a completed claim form within a certain date (and does not opt-out of the class according to the procedures stated in the Proposed Notice), then the Settlement Class Member will remain in the class and be bound by the judgment and release, but will receive nothing.[3] *Id.* at 33, 36, 41. The only indication of the deadline for returning completed claim forms is in the proposed Preliminary Approval Order (discussed below), which states that the Claim Deadline is sixty days from the Notice Deadline. *Id.* at 51.

Should a Settlement Class Member desire to submit a claim, the class member can complete the postcard attached to the Proposed Notice and mail it.[4] *Id.* at 41. The Settlement Class Member may also complete a claim form online on the "Settlement Website,"[5] download a claim form and mail that to the Settlement Administrator, or call the Settlement Administrator. *Id.* at 35. The instructions on the postcard tell the class member that they need a "unique identifier." *Id.* at 41. The class member must provide their full contact information. *Id.*

The Proposed Notice also provides procedures for objecting to the settlement or opting out of it. *Id.* at 36-37. To object to the settlement, a class member must file a written objection with the Court by a certain date. *Id.* at 37. In the proposed Preliminary Approval Order, that date is specified as sixty days from the Notice deadline. *Id.* at 51. The Proposed Notice states the following regarding objecting to the Agreement:

> You may give reasons as to why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter saying that you object to *Jim Youngman and Robert Allen v. A&B Insurance and Financial, Inc*. You must make your objection in writing and file it with the Court. The written objection

---

[3] This provision is not in the Agreement.

[4] The postage is pre-paid. Doc. No. 46-1 at 41.

[5] The Agreement defines "Settlement Website" as "the website to be created by the Settlement Administrator containing full details and information about the Settlement, including this Agreement and the Notice." Doc. No. 46-1 at 7.

> must (a) contain information sufficient to allow the parties to
> confirm that you are a member of the Settlement Class; and (b)
> include a statement of your specific objections, as well as any
> documents that you would like the Court to consider. You must
> file the objection with the Court no later than Month XX, XXXX.

*Id.* at 37. Thus, the Proposed Notice requires that objections be made in writing, sent to the names

of the parties from the style of this case, and filed with the Court. If an objecting member wishes

to appear at the Final Approval Hearing, the objecting member must include a notice of this

intention in the objection. *Id.* at 38. Specifically the Proposed Notice says, "If you filed an

objection (see Question 15, above) and intend to appear at the hearing, you must state your

intention to do so in your objection. To speak, you must send a letter saying that it is your 'Notice

of Intention to Appear' in *Jim Youngman and Robert Allen v. A&B Insurance and Financial, Inc.*,

Case No. 6:16-cv-01478-CEM." *Id.*

The Proposed Notice states the following regarding payment of attorney's fees and

expenses: "Class Counsel will ask the Court to approve payment of up to $1,416,666.67 to them

for attorneys' fees and an additional $42,922.86 in expenses. This amounts to 33 1/3% of the total

$4,250,000 fund." *Id.* at 36. It is not clear if the 33 1/3% is referring to only the attorney's fees or

to the attorney's fees plus the $42,922.86 in expenses.

### D.    The Proposed Preliminary Approval Order

The Proposed Preliminary Approval Order (the "Proposed Preliminary Order")

preliminarily certifies the Settlement Class as the following:

> All persons within the United States whom Defendant, through a
> third party call center, initiated either: (a) more than one
> telemarketing call within any twelve-month period to phone
> numbers registered on the Do Not Call Registry for at least 31 days;
> or (b) any telephone calls to cellular telephone numbers using an
> automatic telephone dialing system or an artificial or prerecorded
> voice *between August 18, 2012 through April 26, 2017*, as reflected
> in the records produced by the third party call centers. The telephone

> numbers of these individuals for the relevant time period are
> identified in the February 21st, 2017 expert report of Anya
> Verkhovskaya.

Doc. No. 46-1 at 45 (emphasis added). Thus, its definition of the Settlement Class is consistent with the definition in the Agreement, retaining the temporal limitation only as to Subparagraph (b). Including the last sentence, regarding the list of the telephone numbers, indicates that the parties intend for the Settlement Class to encompass only those numbers on the list created by Verkhovskaya.

The Proposed Preliminary Order states that an objecting Settlement Class Member may appear at the Final Approval Hearing. *Id.* at 49. It does not contain the requirement in the Proposed Notice that the objecting member must state the intention to appear at the hearing in the objection itself. *Id.* at 38.

The Proposed Preliminary Order also includes dates for certain tasks to be accomplished, including when claim forms must be returned and that Final Approval Submissions shall be submitted seven days before the Final Approval Hearing. *Id.* at 51.

### E.   The Proposed Final Approval Order and Judgment

The Proposed Final Approval Order and Judgment (the "Proposed Judgment") incorporates the defined terms in the Agreement. Doc. No. 46-1 at 24 n.1. It specifically defines the certified settlement class as the following:

> All persons within the United States whom Defendant, through a
> third party call center, initiated either: (a) more than one
> telemarketing call within any twelve-month period to phone
> numbers registered on the Do Not Call Registry for at least 31 days;
> or (b) any telephone calls to cellular telephone numbers using an
> automatic telephone dialing system or an artificial or prerecorded
> voice *between August 18, 2012 through April 26, 2017*, as reflected
> in the records produced by the third party call centers. The telephone
> numbers of these individuals for the relevant time period are

identified in the February 21st, 2017 expert report of Anya Verkhovskaya.

*Id.* at 25-26 (emphasis added). Thus, the Proposed Judgment follows the Proposed Preliminary Order and the Agreement in defining the Settlement Class. The Proposed Judgment bars and permanently enjoins the "Releasing Parties" from pursuing the "Released Claims" against the "Released Parties." *Id.* at 27-28.

## II.    APPLICABLE LAW

The parties seek preliminary approval of the Agreement, provisional certification of the Settlement Class, and approval of the Proposed Notice and the procedures thereto. Doc. No. 46 at 10, 18-19. Before such relief is given, the Court must make a preliminary determination as to whether the settlement is fair and adequate. Fed. R. Civ. P. 23(e)(1), (2). The Court must also certify the Settlement Class for settlement purposes. Fed. R. Civ. P. 23(c).

### A.    Preliminary Approval

The Court is required "to make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Fresco v. Auto Data Direct, Inc.* No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). When making such a determination, the Court decides whether the proposed settlement "is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement." *Id.* (citations and quotations omitted). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litigation*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (citations omitted). After determining the fairness of the settlement terms, the Court must "communicate the proposed settlement to the class, *review and approve the proposed form of notice to the class*, and … authorize the manner and form of dissemination of the notice."

*Family Med. Pharmacy, LLC v. Perfumania Holdings*, No. 15-0563-WS-C, 2016 WL 7320885, at *5 (S.D. Ala. Dec. 14, 2016) (citations omitted) (emphasis added). If the Court finds the proposed settlement defective, it generally cannot rewrite it. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1160 (11th Cir. 1983) ("Courts are not permitted to modify settlement terms or in any manner to rewrite the agreement reached by the parties."). Instead, the Court may only accept or reject the settlement. 4 Newberg on Class Actions § 13:12 (5th Ed. 2014).

### B.    Certification of a Settlement Class

Although the matter is not currently before the Court for final approval of the Settlement Class, it is helpful to keep the requirements of Rule 23 for certification of a settlement class in mind when determining whether certifying the settlement is within the range of possible approval. "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Diakos v. HSS Sys.*, *LLC,* 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015). "Whether a class is certified for settlement or for trial, the Court must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met." *Id.* Rule 23(a) is satisfied when the movant shows: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Although not explicitly stated in Rule 23, the Eleventh Circuit has also required that the: 1) class representative has standing to sue; and 2) proposed class is adequately defined and clearly ascertainable. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class … the district court must determine that at least one named

class representative has Article III standing to raise each class subclaim"); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (citing *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)) ("[A] plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable'").

Should the movant attempt to certify a class under Rule 23(b)(3), such as is the case here, two additional requirements must be satisfied. First, the movant must show that the questions of law or fact common to the class members predominate over any questions affecting individual members. Fed. R. Civ. P. 23(b)(3). Second, the movant must show that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.*

Courts must perform a "rigorous analysis" to ensure that the movant meets the Rule 23 requirements before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).

## III.   ANALYSIS

### A.    The Agreement

#### 1.    Identifying the Settlement Class Members

It appears from the Agreement that the parties identified the Settlement Class Members as all individuals or entities included in the definition of "Settlement Class," that have not submitted a valid request for exclusion. As mentioned above, the Class List is mentioned in the Settlement Class definition.[6] Doc. No. 46-1 at 6-7. Plaintiffs state in the Motion that their expert identified 330,511 unique telephone numbers. Doc. No. 46 at 9. They do not, however, explain how their

---

[6] Plaintiffs also state in the Amended Complaint that members of the class "are identified in the February 21st, 2017 expert report of Anya Verkhovskaya." Doc. No. 42 at ¶ 38.

expert ascertained these telephone numbers or how they will or have determined names and addresses of Settlement Class Members from these telephone numbers. Plaintiffs do not state who the expert identified as Settlement Class Members or what records were used to determine the Settlement Class Members, other than a generic description of "records produced by the third party call centers." Doc. No. 46-1 at 6. The Class List was not filed with the Court. The references to the Class List sometimes state that individuals are identified, but in other instances state only that numbers are identified. Compare Doc. No. 42 at ¶ 38 ("These individuals are identified in the February 21st, 2017 expert report of Anya Verkhovskaya.") with Doc. No. 46-1 at 6-7 ("The telephone numbers of these individuals for the relevant time period are identified in the February 21st, 2017 expert report of Anya Verkhovskaya ('**Class List**')."). The record suggests that the Class List contains both names and telephone numbers. It is also unclear whether the Class List contains telephone numbers that were on the Registry but called twice within twelve months and the cell phone numbers that were called using an ATDS, or the telephone numbers from just one of these categories.

The Class List is at the center of the Agreement. The Agreement defines "Releasing Parties" as "Plaintiffs and *each member of the Settlement Class identified on the Class List* and not opting out, and their respective assigns, heirs, successors, predecessors, parents, subsidiaries, officers, directors, shareholders, members, managers, partners, principals, representatives, employees (each solely in their respective individual capacity as such) . . . ." Doc. No. 46-1 at 5. The Proposed Judgment bars the Released Parties from commencing any of the Released Claims or claims related thereto against the Released Parties. *Id.* at 28. The Settlement Class does not include "Class List" as a way to define "Settlement Class," however. Instead, the Class List is simply referred to in the definition of "Settlement Class" as a list of the telephone numbers of

individuals in the Settlement Class. *Id.* at 6. Thus, it appears that a person could be a member of the Settlement Class, but not a Released Party, if the person was not on the Class List, but did meet the criteria of either of the subcategories comprising the Settlement Class. If that person submitted a valid claim, then under the Agreement, Defendant would be obligated to pay the claim,[7] *id.* at 8, but would not be released from any further claims from that person not listed on the Class List.

As discussed above, the Court does not have the Class List, but collectively and consistently reading the documents before the Court leaves the impression that the Class List contains both telephone numbers and names.[8] The Court's preliminary and final orders approving the settlement must be crystal clear about who is in the Settlement Class and who is "identified on the Class List" such that if they do not opt out, they will be bound by the Final Judgment and release contained in the Agreement. Therefore, it is essential to understand exactly what information is on the Class List.[9]

Without more information regarding the propriety of the means and methods used to determine the Settlement Class Members, it cannot be determined whether the Settlement Class is adequately defined and clearly ascertainable or was ascertained using objective criteria. *See Brown*, 817 F.3d at 1233-34 ("A district court that has doubts about whether 'the requirements of Rule 23 have been met should refuse certification until they have been met.'") (citations omitted). Accordingly, it is recommended that the Court deny the Motion and direct the parties to provide information, including affidavits, regarding the Class List, how telephone numbers on the Class

---

[7] The Agreement states that "the Settlement Administrator shall pay from the Settlement Fund . . . all Settlement Class Members who filed a valid claim . . . ." Doc. No. 46-1 at 8.

[8] The Amended Complaint states that the proposed class consists of "individuals . . . identified in the February 21st, 2017 expert report of Anya Verkhovskaya[,]" Doc. No. 42 at ¶ 38, and the definition of Releasing Parties contains the phrase "each member of the Settlement Class identified on the Class List . . . ." Doc. No. 46-1 at 5. The definition of Settlement Class in the Agreement only refers to the telephone numbers being on the Class List, however. *Id.* at 6-7.

[9] Should the parties have concerns about confidentiality, the parties should consider whether they may file the Class List under seal in accordance with Local Rule 1.09.

List were ascertained, and how Plaintiffs will or have determined names and addresses of Settlement Class Members.

### 2. Defining the Settlement Class

The parties must show that the Settlement Class is "adequately defined and clearly ascertainable." *Carriuolo*, 823 F.3d at 984. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 680 (M.D. Fla. 2015). Such objective criteria should be administratively feasible, which means "that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Id.* (citations omitted). Accordingly, if Plaintiffs fail to show that the putative class is clearly ascertainable, then the Court must deny class certification. *Id.*

The proposed class is not adequately defined and clearly ascertainable at this time. It is unclear how the date restriction is applied and whether there are any exclusions to the class.

The Agreement defines the Settlement Class as the following:

> all persons within the United States whom Defendant, through a third party call center, initiated either: (a) more than one telemarketing call within any twelve-month period to phone numbers registered on the Do Not Call Registry for at least 31 days; or (b) any telephone calls to cellular telephone numbers using an automatic telephone dialing system or an artificial or prerecorded voice *between August 18, 2012 through April 26, 2017*, as reflected in the records produced by the third party call centers. The telephone numbers of these individuals *for the relevant time period* are identified in the February 21st, 2017 expert report of Anya Verkhovskaya ("**Class List**").

Doc. No. 46-1 at 6 (emphasis added). In defining "Released Claims," however, the "Released Claims" are "*all claims*, demands, causes of actions, suits, damages, and fees *arising out of or relating to the placing of telemarketing calls made on behalf of, or promoting, A&B Insurance* or goods or services provided by A&B Insurance, arising under state and federal telemarketing laws

*from August 18, 2012 through April 26, 2017*." *Id.* at 5-6 (emphasis added). The Proposed Notice defines the Settlement Class by stating:

> You are in the "Settlement Class" if, *on or after August 18, 2012*, A&B Insurance, or a third party acting on A&B Insurance's behalf:
>
> (2)    Called you on a cellular telephone using an automatic telephone dialing system, or an artificial or prerecorded voice; or
>
> (2)    Called you two or more times within a twelve-month period on a telephone number that was on the National Do-Not-Call Registry.

*Id.* at 34 (emphasis added). In defining "Settlement Class," the Agreement clearly and unambiguously applies the temporal limitation only to the calls made to cellular telephones, while the definition of Released Claims and the Proposed Notice applies the date restriction to both cellular telephones and calls made twice or more within twelve months to telephone numbers on the Registry. *Id.* at 6, 34. In addition, the Proposed Notice does not contain the end date found in the Agreement. The Settlement Class is not adequately defined or clearly ascertainable because it is unclear whether the date restriction applies to both cellular telephones and calls made twice or more within twelve months to telephone numbers on the Registry or only to the calls made to cellular telephones.

There is also an ambiguity because the Amended Complaint, in tentatively defining the class, excludes certain people and entities from it, Doc. No. 42 at ¶ 39, while the Agreement does not contain any exclusions from the class. Due to these ambiguities and inconsistencies in defining the Settlement Class, the Motion should be denied.

3.       Modifying the Agreement After Preliminary Approval

The Agreement states the following:

> Such Preliminary Approval Order shall also authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to this Agreement) so long as they are consistent in all material respects with the terms of the Final Approval Order and Judgment.

Doc. No. 46-1 at 13. If the parties were permitted to modify the Agreement after the Court approved it, then they could circumvent or undermine the Court approval process. Thus, it is recommended that if the Agreement contains this provision, then it not be approved.

> 4.      The *Cy Pres* Award

The Agreement provides for a second distribution to the Settlement Class Members of the leftover funds associated with previously-issued checks that become null and void, "if doing so is administratively feasible." Doc. No. 46-1 at 9. "Any remaining funds, including to the extent a second distribution is not administratively feasible, shall be distributed as a *cy pres* award to such organization(s) as the Court may elect in its sole discretion. The parties propose the Florida Bar Foundation." *Id.* "[T]he term cy pres has generally referred to an effort to provide unclaimed compensatory funds to a charitable interest that is in some way related to either the subject of the case or the interests of the victims, broadly defined." Martin H. Redish et. al., *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617, 620 (2010). It would benefit the Court if the parties propose additional organizations for the *cy pres* award, specifically ones that are related to the subject of this litigation.

> 5.      Attorneys and Plaintiff Incentive Awards

The Agreement states that Class Counsel shall apply "for a fee award up to one-third of the Common Fund plus out-of-pocket costs incurred by Class Counsel in this litigation." Doc. No. 46-1 at 15. The Agreement uses the phrase "Settlement Fund," however, not "Common Fund." *Id.* at 7. "Common Fund" is neither defined in the Agreement nor used in any other part of it.

The Agreement includes Thomas Cargill as "A&B Insurance Counsel," *id.* at 3, but he was permitted to withdraw from representing Defendant in this case. Doc. No. 51. Thus, the parties may wish to amend the Agreement to reflect Mr. Cargill's withdrawal.

In the Agreement, it states that $10,000 per named Plaintiff will be requested as an incentive award. Doc. No. 46-1 at 15. No information is provided as to why this is an appropriate amount, especially in light of the Amended Complaint stating that Plaintiffs will seek statutory damages "of up to $1,500 for each and every call that violated the TCPA." Doc. No. 42 at 9.

### B.    The Proposed Notice

Should a party attempt to certify a class under Federal Rule of Civil Procedure 23(b)(3), notice must be provided to all class members. *Miles v. Am. Online, Inc.*, 202 F.R.D. 297, 305 (M.D. Fla. 2001). Federal Rule of Civil Procedure 23(c)(2) requires that the notice be as "best [as] practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)). When reviewing the settlement for preliminary approval, the Court must "review and approve the proposed form of notice to the class …" *Family Med. Pharmacy,* 2016 WL 7320885, at *5. After reviewing the Proposed Notice, the undersigned recommends that the Motion be denied.

### 1.    Definition of Settlement Class

As discussed above, the Proposed Notice carries over the ambiguity regarding the date restriction in defining the Settlement Class contained in the Agreement. Additionally, the Proposed Notice does not contain any end date for calls received to be a member of the Settlement Class.

### 2.    Means of Providing Notice

It appears that the parties contemplate two methods of providing notice to potential class members: directly mailing them and creating a Settlement Website. Doc. No. 46 at 9. Simply put,

the Motion provides insufficient information regarding whether or not their proposal is appropriate. There is no information regarding the percentage of the telephone numbers on the Class List for which mailing addresses were obtained. Mail may be the most appropriate and practicable method of notifying those for whom Plaintiffs have addresses. But without knowing how many addresses from the Settlement Class were ascertained, the Court cannot determine the appropriateness of the notice via mail. Plaintiffs have not explained what methods of providing notice to the Settlement Class Members are available other than direct mail and a website and why those other methods were rejected. For example, the parties have not provided any information regarding whether or not they believe they have identified all or only some of the phone numbers that comprise the Settlement Class. As to those numbers that have been identified, the parties say nothing about whether they have identified names associated with all or only some of the phone numbers. Similarly, they fail to state whether they have addresses for all or only some of the identities at issue. If the parties have adduced less than all of this information, then the parties fail to address important issues such as what alternative methods could be used to gather such information, the feasibility of using same, and the appropriateness of other means of notice, such as advertising. This alone precludes approving the Proposed Notice.

The Agreement and the Proposed Notice discuss the Settlement Website as providing both notice and a means for Settlement Class Members to submit claims, Doc. No. 46-1 at 7, 10, 35, but the parties do not explain how this website may be found, other than by including it in the notice mailed to the Settlement Class Members. Therefore, more information is needed regarding how the Settlement Class Members will be notified in addition to via mail.

3.      Making a Claim

The Proposed Notice does not contain the deadline for making a claim. Although the Motion states that the deadlines for opting out and objecting to the Agreement will be conspicuously listed in the Notice and on the settlement administrator's website, Doc. No. 46 at 9, no such provision is made for the deadline within which to submit a claim. Additionally, the instructions on the postcard tell the class member that they need a "unique identifier," to submit a claim, but there is no definition of "unique identifier" or where that information can be found. Doc. No. 46-1 at 41.

4.      Objecting to the Agreement

There are significant discrepancies between the requirements for valid objections to the settlement under the Agreement and under the Proposed Notice. Doc. No. 46-1 at 10-11, 37. The information regarding objecting in the Proposed Notice does not state that the objector must send the objection to the Settlement Administrator, in addition to filing it with the Court, as the Agreement requires. *Id.* at 10-11, 37. The provision in the Agreement regarding objections also requires much more detailed information than the Proposed Notice requests. For example, the Proposed Notice simply states that the objection must "include a statement of your specific objections, as well as any documents that you would like the Court to consider." *Id.* In contrast, under the Agreement, the objection must contain "all grounds in detail for the objection, with factual and legal support for each stated ground; the identity of any witnesses he or she may call to testify; [and] copies of any exhibits that he or she intends to introduce into evidence at the Final Approval Hearing . . . ." *Id.* at 10-11. The Agreement also requires the objector to state "the identity (including name, address, phone number and email) of any lawyer who was consulted or assisted with respect to any objection, and a statement of whether he or she intends to appear at the Final

Approval Hearing with or without counsel." *Id.* The Proposed Notice does not inform the Settlement Class Members of these requirements. *Id.* at 37. In eliminating the discrepancies, the parties should be cognizant of requiring the objectors to file the objections with the Court.

   5.  Claim Amount

   In the Proposed Notice, the parties estimate that the Settlement Class Members will receive approximately $85.00 per claim. Doc. No. 46-1 at 32, 35, 42. It is not known how the parties arrived at this figure. The Settlement Fund consists of $4,250,000.00. *Id.* at 7. Attorney's fees and expenses and class representative incentive awards are calculated to be approximately $1,479,589.53.[10] *Id.* at 36-37. Plaintiffs represent that they identified 330,511 unique telephone numbers, the owners of which may have a claim. Doc. No. 46 at 9. After subtracting the attorney's fees and expenses and class representative awards, $2,770,410.47 is left to apportion among the Settlement Class Members. Assuming approximately half of the unique telephone numbers result in a claim, each claim would be approximately $16.76, without taking into account the costs of administering the settlement. More explanation is needed to support the estimated claim amount of $85.00 in the Proposed Notice.

   6.  Attorney's Fees and Expenses

   The Proposed Notice states the following regarding payment of attorney's fees and expenses: "Class Counsel will ask the Court to approve payment of up to $1,416,666.67 to them for attorneys' fees and an additional $42,922.86 in expenses. This amounts to 33 1/3% of the total $4,250,000 fund." *Id.* at 36. It is not clear if the 33 1/3% is referring to only the attorney's fees or to the attorney's fees plus the $42,922.86 in expenses.

---

[10] This figure does not include the costs of administering the settlement.

Because of the aforementioned issues, the Proposed Notice is deficient and lacking sufficient support for approval by the Court. Accordingly, the parties failed to establish that the Proposed Notice is the "best practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### C.    Proposed Preliminary Order

There is conflict between the Proposed Notice and the Proposed Preliminary Order regarding what an objecting Settlement Class Member must do to be permitted to speak at the Final Hearing. The Proposed Notice requires the objecting member to put the notice of intention to speak in the objection. Doc. No. 46-1 at 38. The Proposed Preliminary Order does not contain this requirement. *Id.* at 49-50. Additionally, the same issues regarding defining the Settlement Class and Released Parties in the Agreement and the Proposed Notice discussed above continue with the Proposed Preliminary Order. The Proposed Notice must be consistent with the Proposed Preliminary Order.

In the Proposed Preliminary Order, Class Counsel is directed to file and serve the motion for final approval, any application for a compensation award to the Class Representatives, and an application for an award of attorney's fees and expenses seven days before the Final Approval Hearing. Doc. No. 46-1 at 51. A more appropriate time period would be thirty days before the Final Approval Hearing. If this deadline is extended, then the Final Approval Hearing should be moved to 140 days after the Preliminary Hearing.

### D.    Proposed Judgment

The foregoing issues all impact the disposition of the final judgment. The Proposed Judgment incorporates the definitions from the Settlement Agreement and quotes it in certifying the class. Doc. No. 46-1 at 24 n.1, 25-26. It carries out the injunction on the Releasing Parties regarding Released Claims against the Released Parties. *Id.* at 27-28. As the Proposed Judgment

will be binding on the Releasing Parties, it is imperative that "Settlement Class" and "Releasing Parties" be clearly and consistently defined.

## IV.    CONCLUSION

In light of the foregoing issues, it is recommended that the Motion be denied.

Accordingly, it is **RECOMMENDED** that the Court:

1) **DENY** the Motion (Doc. No. 46); and

2) Allow the parties to file a renewed motion addressing the issues outlined in this Report and Recommendation.

### <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual findings or legal conclusions the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1. **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

Recommended in Orlando, Florida, on September 29, 2017.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Courtroom Deputy